UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

WILLIAM K. PRZYBYSZ,

        Debtor.

_____/

Case No. DG 10-07110
Hon. Scott W. Dales
Chapter 7

JEFF A. MOYER,

        Plaintiff,

v.

MERWYN KOSTER and BILTMORE, LLC,

        Defendants.

_____/

Adversary Pro. No. 12-80174

OPINION AND ORDER REGARDING DISMISSAL MOTION

PRESENT:    HONORABLE SCOTT W. DALES
                United States Bankruptcy Judge

I. INTRODUCTION

Chapter 7 Debtor William Przybysz (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 3, 2010 (the "Petition Date"), and the United States Trustee selected Jeff A. Moyer to serve as Chapter 7 Trustee (the "Trustee"). After investigating the Debtor's affairs, the Trustee came to believe that the Debtor and several related entities conducted a Ponzi scheme for many years before the Petition Date. Accordingly, in May of this year -- shortly before the expiration of the two-year period prescribed in 11 U.S.C. § 546 -- the Trustee filed thirty complaints against alleged Ponzi scheme investors who received payments during the course of the Debtor's alleged scheme. Through these complaints, which the Trustee has since amended, he seeks an order avoiding the payments as actual or

constructively fraudulent transfers under Michigan's Uniform Fraudulent Transfer Act, M.C.L. § 566.31 *et seq.* ("UFTA") made applicable in bankruptcy court under 11 U.S.C. § 544(b) (Counts I-III).  Assuming avoidance, he seeks recovery under 11 U.S.C. § 550 (Count IV).

Rather than answering the amended complaints, most of these investors (the "Defendants") filed dismissal motions invoking Fed. R. Civ. P. 12(b)(6) and challenging the Trustee's compliance with pleading rules under the rubric of *Ashcraft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  On September 12, 2012, the court held a hearing to consider twenty-one such dismissal motions.[1]  The court has carefully considered the Amended Complaint in each adversary proceeding and the parties' legal arguments, both written and oral.  For the following reasons, the court will direct the Trustee to provide a more definite statement of his claims as contemplated in Fed. R. Civ. P. 12(e).

For the sake of convenience, the court will enter this Opinion and Order in the docket for *Moyer v. Koster*, 12-80174, and shall refer to the Amended Complaint filed in that docket (the "Amended Complaint,"  DN 6), recognizing that the allegations in the other complaints are the same in all material respects to those within the Amended Complaint.

## II.  JURISDICTION AND RELATED MATTERS

The United States District Court has jurisdiction over the Debtor's Chapter 7 bankruptcy case pursuant to 28 U.S.C. § 1334, but has referred the case and related proceedings to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D.

---

[1] The hearing addressed the dismissal motions filed in the following adversary proceedings: *Moyer v. Koster et al.*, Adv. No. 12-80174; *Moyer v. Kooistra et al.*, Adv. No. 12-80175;  *Moyer v. DeKock*, Adv. No. 12-80176;  *Moyer v. Lankfer*, Adv. No. 12-80177; *Moyer v. Buggia,* Adv. No. 12-80179; *Moyer v. Dye*, Adv. No. 12-80181; *Moyer v. Wieland*, Adv. No. 12-80182; *Moyer v. Driesenga*, Adv. No. 12-80183; *Moyer v. VanSolkema et al.*, Adv. No. 12-80191; *Moyer v. VanSolkema et al.*, Adv. No. 12-80192;  *Moyer v. Desmit et al.*, Adv. No.  12-80193; *Moyer v. Kniff*, Adv. No. 12-80194; *Moyer v. Kniff*, Adv. No. 12-80196; *Moyer v. Hartgerink*, Adv. No. 12-80198; *Moyer v. Goodspeed*, Adv. No. 12-80199; *Moyer v. Edwards et al.*, Adv. No. 12-80216; *Moyer v. Agerson*, Adv. No.  12-80217; *Moyer v. Michalowski*, Adv. No. 12-80218; *Moyer v. Wackerlin*, Adv. No.  12-80219; *Moyer v. Olson*, Adv. No. 12-80220; and *Moyer v. Schofield*, Adv. No. 12-80221.

Mich.).   This adversary proceeding and the other twenty proceedings considered during the September 12, 2012 hearing are core proceedings because they are proceedings to "determine, avoid, and recover fraudulent conveyances."  28 U.S.C. § 157(b)(2)(H).  The Supreme Court's recent decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), does not undermine the court's authority to resolve the dismissal motions for a number of reasons, including that the court's resolution will not be embodied in any final judgment because the court has determined to grant leave to re-plead.

### III.  ANALYSIS

1.      Trustee's Allegations

As Trustee's counsel confirmed during oral argument, the Trustee filed virtually identical amended pleadings against each Defendant, with variations reflecting only the identity of the particular Defendant or Defendants, and the aggregate amount of the transfers.  The court has identified the well-pleaded factual allegations within the Amended Complaint, and with one exception, accepts them as true for purposes of this Opinion and Order.[2]  The gist of each pleading is that the Debtor conducted a fraudulent "Ponzi" scheme through which he induced "investors" to fund charity tennis events, with the promise of a 15-50% return within five to sixty days.  The Trustee describes the scheme as follows:

> The platform for Debtor's scheme was a series of alleged charity tennis tournaments around the country at which the Debtor and tennis celebrities would play (for an appearance fee) each other to raise money for leukemia research.  During the relevant time period for purposes of these proceedings, the Debtor's scheme was never a legitimate enterprise.

---

[2] Case law does not require the court to accept the veracity of allegations affecting or invoking the court's jurisdiction.  *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 918 (6th Cir.1986).  As explained below, the Trustee's alter ego theory calls into question his standing and therefore the court's jurisdiction, but the court does not reach the alter ego controversy given its narrow reading of the Amended Complaint.

*See* Amended Complaint at ¶ 15. According to the Trustee, the Debtor duped some of the investors, and enlisted others who willingly and knowingly participated in his fraud. *Id.* at ¶ 18. He used the funds from later investors to repay principal and interest to earlier investors, promising unusually high rates of return and encouraging investors to recruit others. *See, e.g., id.* at ¶¶ 17-20, 23 and 30. He also used some of the funds for his own personal purposes. *Id.* at ¶ 31. In addition to some of the investors who were aware of the scheme, the Debtor also employed several related corporate entities, whom the Trustee identifies as WKP Enterprises, LLC, Miracle Match Sports & Entertainment, LLC, and BP Sports & Entertainment (collectively the "Entities"). The Trustee contends that the "Debtor is and/or was the principal and/or sole shareholder and sole employee of the Entities, which were no more than shells that had the appearance of a legitimate business purpose." *Id.* at ¶ 13. The Debtor allegedly ignored unspecified corporate formalities "such that there was no distinction between the Debtor and the Entities during the perpetration of his fraudulent scheme." *Id.* at ¶ 14.

According to the Trustee, the tennis tournaments the Debtor and the Entities organized never turned a profit, and very little money found its way to charity, despite the Debtor's supposed representations to the community and the investors. *See* Amended Complaint at ¶ 26. Nevertheless, to keep up appearances, the Debtor "continued to write checks to older investors from his personal accounts or the Entities' accounts, using the funds solicited from the newer investors." *Id.* at ¶ 37.

In the three UFTA "Counts" of the Amended Complaint, the Trustee incorporates by reference his general description of the Debtor's Ponzi scheme. *See* Amended Complaint at ¶¶ 41, 49 and 59. He also makes general allegations which echo the text of the UFTA, including, by way of illustration, these allegations that come from Count I, the actual fraud count:

43.     Within six (6) years of the Petition Date, Debtor made Transfers of his interest in property to or for the benefit of Defendant in the amount of at least Three Hundred Thirty Thousand Dollars ($330,000.00).

44.     The Transfers constituted the conveyance of an interest of the Debtor's in property within the meaning of MCL 566.31(l).

45.     Each of the Transfers was made with the actual intent to hinder, delay or defraud Debtor's then existing and/or future creditors.

46.     Debtor made each of the Transfers to or for the benefit of Defendant in furtherance of a fraudulent investment scheme.

47.     The Defendants did not take such Transfers for value or in good faith and did not give value to the Debtor in exchange for such Transfers.

48.     The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to MCL § 566.31 *et seq*.

*See* Amended Complaint at ¶¶ 43-48.  Similarly, the Trustee parrots the statutory elements for constructively fraudulent transfers under the UFTA (Counts II and III), again incorporating the more detailed description of the scheme by way of boilerplate references at the beginning of each count.  Finally, the Trustee includes in Count IV a request under 11 U.S.C. § 550 for recovery of the transferred property.

2.     The Defendants' Responses

With similar conformity, each of the Defendants essentially takes the same tact in responding to the Trustee's amended complaints, arguing that the pleading relies on a conclusory or "formulaic recitation" of the statutory elements of a fraudulent transfer claim under state law, unadorned by specific allegations showing that the Trustee has a plausible (not merely possible) right to relief.  The Defendants naturally cite *Ashcraft v. Iqbal* and *Bell Atlantic Corp. v.*

*Twombly* and the offspring of those cases from within and outside our Circuit and District. In addition, because the Amended Complaint contains allegations of fraud, each Defendant challenges the Trustee's pleading as not meeting the heightened pleading standard required by Fed. R. Civ. P. 9(b). The Defendants urge the court to dismiss the amended complaints, arguing that they include insufficient factual allegations when viewed through the lens of *Iqbal* and *Twombly*.

Although the Defendants filed their motions under Fed. R. Civ. P. 12(b)(6), during oral argument, they also challenged the Trustee's standing to avoid and recover transfers that the Entities allegedly made. *Compare* Fed. R. Civ. P. 12(b)(1) *with* 12(b)(6); *see also* Fed. R. Bankr. P. 7012.

3.      Alter Ego and Standing

At oral argument, based upon the Trustee's suggestion that the Entities were the "alter egos" of the Debtor, several of the Defendants' attorneys argued that the Trustee lacks standing to avoid and recover property that the Entities may have transferred to them. Indeed, the court and the parties discussed the Trustee's alter ego theory at some length, suggesting that the Trustee's case depends to some extent on avoiding transfers from the Entities, not just the Debtor. Although the Trustee may have intended to seek this broader recovery by filing the Amended Complaint, strictly speaking, his pleading alleges only that "the Debtor made Transfers of his interest in property to or for the benefit of Defendants," and that the Defendants received one or more transfers "from the Debtor." *See* Amended Complaint at ¶¶ 35 and 43. Except for the general allegations recited in paragraphs 9 through 40, the Amended Complaint does not explicitly state that the Trustee is seeking to avoid or recover property transferred by the Entities. This, at least, is how the court will interpret the pleading as it presently stands.

Notwithstanding the Trustee's arguments in favor of his alter ego theory during oral argument, the court arrives at this interpretation because in his Amended Complaint, Trustee's counsel defined several important capitalized terms bearing on his actual claims, including the "Debtor," the "Entities," and the "Transfers." *See* Amended Complaint at ¶¶ 9 ("Debtor"), 12 ("Entities") and 35 ("Transfers"). Significantly, the definition of "Debtor" means "William K. Przybysz," but does not include the "Entities." As for the "Transfers," the Trustee penned the following definition:

> 35. Over the course of the scheme, Defendants received no less than Three Hundred Thirty Thousand Dollars ($330,000.00), through one (1) or more transfers from the Debtor (the "Transfers").

*See id.* at ¶ 35. In view of the Trustee's carefully defined terms, the Amended Complaint alleges only that the Debtor, rather than the Entities, effected the Transfers. The operative identical paragraphs from each of the Trustee's three avoidance counts also support this reading of the Amended Complaint:

> Within six (6) years of the Petition Date, Debtor made Transfers of his interest in property to or for the benefit of Defendant in the amount of at least Three Hundred Thirty Thousand Dollars ($330,000.00).

*See* Amended Complaint at ¶¶ 43, 51 and 61. In his recovery count under 11 U.S.C. § 550, the Trustee simply seeks to recover the "Transfers" -- a capitalized term defined by reference to funds the Defendants received "from the Debtor." In addition, the Trustee alleges that the Defendants are "initial transferees of the Transfers," thereby attempting to foreclose any good faith defenses that might be available had they been subsequent transferees who received funds from the Debtor through the Entities. *See* Amended Complaint at ¶ 69.

The rules are quite clear, as Trustee's counsel suggested at oral argument, that motions under Fed. R. Civ. P. 12(b)(6) test the sufficiency of the pleadings, and that the court cannot consider matters outside the pleadings. *See* Fed. R. Civ. P. 12(d). In testing the sufficiency of the pleadings, the court intends to take the Trustee at his written word, without expanding the relief requested beyond the actual words he has employed within the Amended Complaint.

Moreover, interpreting the Amended Complaint as seeking avoidance and recovery of property that the Entities transferred would, as defense counsel suggests, raise serious issues concerning the Trustee's standing and doubts about the court's jurisdiction. *Harker v. Troutman (In re Troutman Enterprises, Inc.)*, 286 F.3d 368 (6th Cir. 2002) (Standing is a "jurisdictional requirement"). The court is not inclined to interpret the Trustee's complaint in a manner that undercuts its jurisdiction.

However, if the Trustee intended to allege that the Defendants have indirectly received Transfers, through the conduit or offices of the Entities (as his counsel seemed to assert during oral argument), the court will allow him to amend his pleadings to identify with particularity the transfers from the Entities that he seeks to avoid and recover. If he does so, his amendment should make the requisite factual allegations supporting the jurisdictional requirement of standing. *See* Fed. R. Civ. P. 8(a)(1) (complaint must include "short and plain statement of the grounds for the court's jurisdiction"); 28 U.S.C. § 1653 (Amendment of pleadings to show jurisdiction).[3]

---

[3] At oral argument, the Trustee's counsel stated that the Trustee, as the Debtor's successor, may pierce the Entities' corporate veils and apply corporate property to the payment of the Debtor's debts. On the present record, and given the court's narrow interpretation of the Amended Complaint, it is unnecessary to decide the question. The court observes, however, that the issue will depend on Michigan law and that, in Michigan, "[t]he general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders." *See Spartan Tube and Steel, Inc. v. Himmelspach (In re RCS Eng. Products Co., Inc.)*, 102 F.3d 223, 225-26 (6th Cir. 1996). If the Trustee intends to pursue avoidance and recovery of transfers that the Entities made, his pleading must include plausible allegations supported by a cognizable theory.

4.      Pleading After *Iqbal* and *Twombly*

In addition to challenging the Trustee's standing, the Defendants contend that the Amended Complaint is nothing more than a series of formulaic recitations from the UFTA and, with respect to the Ponzi scheme allegations, Wikipedia.  They argue that the vagueness of the allegations and the lack of factual support preclude the court from finding that the Trustee has asserted plausible claims for relief.

First, the court recognizes that the United States Supreme Court has discarded the articulation of the liberal notice pleading rules formally expressed in *Conley v. Gibson*, 355 U.S. 41 (1957), for the somewhat more stringent articulation of *Iqbal* and *Twombly*.  According to these cases, before unlocking the gate to expensive discovery and other litigation burdens, a trial court must first be satisfied that the plaintiff is asserting not merely a conceivable or possible right to relief, but a plausible one.  *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046 (6th Cir. 2011) (citing *Iqbal* for the proposition that if a plaintiff's complaint is deficient under Rule 8, "he is not entitled to discovery, cabined or otherwise.").  Nevertheless, the high court has not abandoned notice pleading.  *See Erickson v. Pardus*, 551 U.S. 89 (2007).  As the Sixth Circuit explained:

> [T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.

*Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009)  (*quoting Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)).  Accordingly, although federal courts must now insist that pleadings assert a plausible right to relief in order to survive a dismissal motion, notice pleading after *Iqbal* and *Twombly* does not require a plaintiff to prove his case in his early filings.  The rules simply

require that complaints in federal court contain sufficient well-pleaded factual allegations -- a short and plain statement of the claim, not just legal conclusions or an echo of applicable authority -- to permit the court reasonably to infer that "the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8(a)(2).

The court finds, after carefully considering the Amended Complaint, that the pleading fails in several crucial respects to satisfy the notice pleading standards under Fed. R. Civ. P. 8(a)(2).

5.      Trustee Avoidance Powers Under 11 U.S.C. § 544(b)

Under Supreme Court precedent, the Trustee does not step into the shoes of creditors and may not exercise rights personal to creditors, except as expressly provided by statute. *Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 428-29 (1972). The Bankruptcy Code, however, authorizes a trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 . . . ." 11 U.S.C. § 544(b). Although the Trustee's Amended Complaint invokes and depends upon § 544(b), it includes no allegation that a creditor holding an allowed unsecured claim exists, as some of the defense counsel have argued.

Having reviewed the claims register in this case, the court has no doubt that the Trustee can cure this defect in his pleading, but the pleading as presently drafted is technically defective in this respect. The Trustee shall have leave to amend the pleading, again, to allege that a so-called "golden creditor" exists.

6.      Count I (Actual Intent to Defraud)

Under the UFTA, a transfer is fraudulent "as to a creditor, whether the creditor's claim arose before or after the transfer was made," if the debtor made the transfer "with actual intent to

hinder, delay, or defraud any creditor of the debtor." The Trustee's first count purports to allege that the Debtor made actually fraudulent transfers under M.C.L. § 566.34(1)(a), made applicable by 11 U.S.C. § 544(b).

The Defendants challenge Count I as defectively pled under *Iqbal* and *Twombly*, but also under the heightened pleading standards applicable to fraud allegations. *See* Fed. R. Civ. P. 9(b). In response, the Trustee asks the court to accept as true for purposes of these motions the allegations that the Debtor was masterminding a Ponzi scheme, and to indulge a presumption that each transfer made during the life of such a scheme is presumptively made with intent to defraud. The court has weighed the competing arguments.

First, and most generally, "Rule 9(b)'s requirement [to plead fraud with particularity] is not intended to be an insurmountable hurdle for claimants to overcome; the complaint must give the party adequate notice of the charges - it need not marshal all of the evidence against him." *Gold v. Winget*, 407 B.R. 232, 258 (Bankr. E.D. Mich. 2009). Although the *Winget* decision draws some life from the now-retired standards of *Conley v Gibson*, Judge Tucker's observations about the timing of proofs apply even after the Supreme Court rendered its *Iqbal* and *Twombly* decisions. The issue is still notice at the pleading stage.

Second, and more specifically, given the Trustee's description of the Debtor's Ponzi scheme, the court has no difficulty concluding, at the pleading stage, that the Trustee has sufficiently alleged the Debtor's actual intent to hinder, delay, and defraud creditors. The nature of a Ponzi scheme has led some courts to infer fraudulent intent from the very nature of the transactions. *See Rieser v. Hayslip (In re Canyon Systems Corp.)*, 343 B.R. 615, 636-37 (Bankr. S.D. Ohio 2006) ("Actual intent to hinder, delay or defraud may be established as a matter of law in cases in which the debtor runs a Ponzi scheme or a similar illegitimate enterprise, because

transfers made in the course of a Ponzi operation could have been made for no purpose other than to hinder, delay or defraud creditors"); *Bauman v. Bliese (In re McCarn's Allstate Fin., Inc.)*, 326 B.R. 843, 850 (Bankr. M.D. Fla. 2005); *see also Conroy v. Shott*, 363 F.2d 90, 91-92 (6th Cir. 1966) (affirming summary judgment order to extent district court presumed actual intent to defraud from Ponzi scheme).  If the Sixth Circuit is willing to infer fraud at the summary judgment stage, the court will certainly draw the inference at the pleading stage.

Moreover, the pleading rule upon which the Defendants rely itself specifies that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," in contrast to allegations of "fraud" or "mistake" which require more particularity.  *See* Fed. R. Civ. P. 9(b). For this reason, cases generally require plaintiffs to plead with particularity the circumstances constituting the fraud, and with respect to fraudulent statements, must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *LaRue v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 3886876, Slip Op. No. 1:12-cv-68 (W.D. Mich. Sept. 6, 2012).

Here, however, the Trustee's fraud case does not depend on a particular or isolated misrepresentation, but instead involves allegations of ongoing artifice and deception over several years.  It would be impractical to interpret Fed. R. Civ. P. 9(b) as requiring an enumeration of each misrepresentation in the context of a Ponzi scheme, and indeed the cases cited above do not seem to require this result in this context.  *See also* Fed. R. Civ. P. 1; Fed. R. Civ. P. 8(e) (court must construe pleadings "so as to do justice").

The Amended Complaint alleges that the Debtor was engaged in a Ponzi scheme, describes the nature of the scheme by reference to several well-established hallmarks of the

Ponzi fraudster, and therefore sufficiently puts the Defendants on notice of the allegations of fraud undergirding Count I.

To the extent the Defendants criticize the Trustee's insolvency allegations, the lack of specificity does not undermine Count I. When a plaintiff attempts to prove actual fraudulent transfers under the UFTA, the Debtor's solvency or insolvency may be relevant as a badge of fraud under M.C.L. § 566.34(2)(i), but his insolvency is not an element of a *prima facie* case involving actual intent to defraud. *Id.* § 566.34(1)(a). The Defendants' challenge to the specificity of the allegations involving "reasonably equivalent value" fails with respect to Count I for the same reason.

The Defendants' challenge to the Trustee's allegations involving the Trustee's failure to identify the specific components of the aggregated "Transfers," however, has much more traction. Here, the Trustee alleges only generally and in the aggregate that over a six-year period, the Debtor "made Transfers of his interest in property to or for the benefit of Defendant in the amount of at least Three Hundred Thirty Thousand Dollars ($330,000.00)." *See* Amended Complaint at ¶ 43. This allegation does not specify which of the two Defendants in the above-captioned case received the Transfers, nor does it specify when during the six-year period the Debtor made the Transfers. For that matter, the Amended Complaint does not identify the source of the Transfer, at least not if (contrary to the court's reading of that pleading) the Trustee intends to rely on an alter ego theory involving the Entities. Given the Trustee's flirtation with that theory in his Amended Complaint and during oral argument, and given his allegation that the Defendants are "initial transferees," it seems only fair to require more specificity so the Defendants can mount a defense.

For example, because the Trustee is relying on 11 U.S.C. § 544(b) and the UFTA, he must allege a transfer of an interest of the Debtor in property, otherwise he has not stated a claim for avoidance because a transfer from a non-debtor entity does not diminish the estate available to creditors.  As the Supreme Court observed in the analogous context of a preference avoidance action:

> The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate -- the property available for distribution to creditors – "property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings. For guidance, then, we must turn to § 541, which delineates the scope of "property of the estate" and serves as the postpetition analog to § 547(b)'s "property of the debtor."

*Begier v. IRS,* 496 U.S. 53, 59 (1990); *Meoli v. Huntington National Bank (In re Teleservices Group, Inc.)*, 469 B.R. 713, 730 n.55 (Bankr. W.D. Mich. 2012).  As the alter ego discussion during oral argument established, there is considerable confusion about the source of the Transfers despite the Trustee's carefully defined terms in the Amended Complaint, confusion that the court will mitigate by requiring a more definite statement regarding the timing, nature, and source of the Transfers.

In his response brief (the "Trustee Brief," DN 10), the Trustee addresses this crucial element of his *prima facie* case for avoidance in a footnote:

> Some defendants have argued that the Trustee is required to provide specific dollar amount transferred.  However, the Trustee rebuts this argument under the theory that:  (1) stating a minimum amount (as opposed to the specific amount) does not negate plausibility; (2) there is a reasonable expectation that discovery will flush out a specific amount; and (3) the Trustee, having no first-hand knowledge (essentially a third-party), initially is relying

on second-hand information to frame his allegations. Therefore, the amount stated is sufficient to withstand the Motion to Dismiss.

*See* Trustee Brief at p. 7, n.2. In light of the Trustee's allegations regarding the role of the Entities in the alleged Ponzi scheme, however, the court is not persuaded that the minimum, aggregate transfer allegation nudges the pleading across the plausibility line such that the court should subject the Defendants to the burdens of litigation beyond the pleading stage. *New Albany Tractor,* 650 F.3d at 1051.

If the Trustee is seeking to avoid transfers of property by the Entities as opposed to the Debtor -- a point on which the Defendants and the court are in some doubt at present -- he should clearly state this, and his pleading must "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Tam Travel*, 583 F.3d at 903. Clumping all transfers into the defined term "Transfers," without identifying them in a pleading that is pregnant with the suggestion of alter ego or substantive consolidation, prevents the Defendants and the court from determining whether the Trustee has a "viable legal theory." *Id.; see, supra,* n.3.

It is true, as the Trustee argues, that alleging receipt of Transfers in the amount of "at least Three Hundred Thirty Thousand Dollars" does not undermine plausibility, but it does undermine fair notice, the ability of the Defendants to defend, and the rules governing amendment of pleadings. If the Trustee files a second amended complaint in conformance with this Opinion and Order, and if discovery shows that the Defendants received more than $330,000.00, he may seek permission to amend his pleading at that time, and leave the Defendants to their arguments. Nevertheless, pleading the Transfers in an "at least" amount threatens to deprive the Defendants of notice and possible defenses. *See In re Hydrogen, LLC*, 431 B.R. 337, 353 n.8, 356 (Bankr. S.D.N.Y. 2011) (failure to identify specific transfers deprives

defendants of "fair notice of what the plaintiff's claim is" and warrants dismissal of fraudulent conveyance and preference counts).

Accordingly, the court will order a more definite statement regarding the Transfers and direct the Trustee to amplify his allegations by specifying the date, amount, method and source of each payment included within the aggregate "Transfers" that the Trustee seeks to avoid and recover. This conclusion applies with respect to each of the Trustee's avoidance counts.

7.      Count II and III (Constructively Fraudulent Transfer)

In Counts II and III, the Trustee seeks avoidance of the Transfers based on a constructive fraud theory, but the court cannot perceive what Count III adds to the Amended Complaint that Count II does not already allege.

The only difference between Count III and Count II is that the latter tracks M.C.L. § 566.34(1)(b)(i) and (ii) but the former does not. *See* Amended Complaint at ¶¶ 55 and 56. Indeed, the Trustee's headings for both counts refer to "§566.34(b)" [sic]. It is not an alternative or hypothetical or inconsistent statement of the claim, *see* Fed. R. Civ. P. 8(d), but merely a redundant one. The court concludes that Count III adds nothing to the Trustee's case that is not already included within Count II, and will, therefore, strike it. Fed. R. Civ. P. 12(f) (court may strike redundant matter from a pleading *sua sponte*).[4]

As for the Trustee's allegations within Count II under M.C.L. § 566.34, the Defendants argue that the Trustee has not adequately alleged facts supporting the Debtor's balance sheet insolvency. The court notes, however, that as with the actual fraud allegations in Count I, insolvency is not an element of a cause of action under the provision of the UFTA upon which the Trustee evidently relies:

---

[4] If the Trustee sought to invoke a section of the UFTA other than the one he cited in Count III, such as M.C.L. § 566.35(1), he may include it in an amended pleading, again with factual allegations establishing a plausible right to relief, which presumably includes the existence of a "golden creditor" whose claim predates each transfer.

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:

(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

M.C.L. § 566.34(1).   The statute does not require either proof or even an allegation of insolvency, strictly speaking, so the Trustee's conclusory allegations regarding insolvency do not render his Amended Complaint vulnerable.   *Compare* M.C.L. § 566.34(1)(b) (does not use the term "insolvent") *with id.* § 566.35 (requires proof that the debtor was or became "insolvent" as result of the transfer).   The statute does, however, require the Trustee to establish a plausible case for believing that the Debtor was undercapitalized given his business activities (§ 566.34(1)(b)(i)) or that he intended to incur (or should have believed he was incurring) debts beyond his ability to repay as they become due (§ 566.34(1)(b)(ii)).

Here, the Trustee's description of the Debtor's role as Ponzi scheme mastermind, together with the admittedly formulaic recitation of the statutory elements of constructive fraud, persuade the court that he has stated a plausible, not merely possible, claim for relief, putting aside for the moment the issue of reasonably equivalent value the Debtor may have received in exchange for the Transfers.   It is certainly plausible that a Ponzi scheme perpetrator who files for

relief under Chapter 7 within a few years after masterminding a Ponzi scheme, was undercapitalized or should have known that he was incurring too much debt.  This is the essence of a Ponzi scheme.

Accepting the allegations of the complaint as true for purposes of the dismissal motions, this aspect of the amended pleading passes muster under M.C.L. § 566.34(1)(b)(i) and (ii), notwithstanding *Iqbal* and *Twombly*.

As just noted, however, and as several of the Defendants' attorneys argued during the hearing, the Amended Complaint, which provided no factual details or specifics regarding the transfers either to or from the Defendants, does not plausibly allege that the Debtor received less than reasonably equivalent value in exchange for the Transfers.  The pleading fails to satisfy *Iqbal* and *Twombly* because, as a matter of law, "[v]alue is given for a transfer . . . if, in exchange . . . an antecedent debt is . . . satisfied."  *See* M.C.L. § 566.33.  Receiving payment from the Debtor under the circumstances alleged is "merely consistent" with liability. Given the statutory definition of value, a complaint alleging that a creditor got paid "stops short" of plausibly stating a right to relief under the UFTA. *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 557).

The Amended Complaint, fairly read, alleges that the Debtor agreed to pay the Defendants back the money they gave him, on the promise of a rich and speedy return, and that he did pay them back.  Amended Complaint at ¶¶ 16-22 and 43.  When the Debtor paid back what he owed the Defendants, this satisfied his antecedent debt, and therefore he received value in exchange, at least with respect to the return of the principal he induced the Defendants to part with.

The Trustee could contend, of course, that an issue regarding reasonably equivalent value could arise under a viable legal theory to the extent the Defendants received an unreasonable return on their money.  But, here, the Trustee does not specify whether the Debtor simply returned principal (receiving reasonably equivalent value, dollar for dollar, in satisfied debt), or whether he in fact paid an exorbitant return.  To allege this element of his constructively fraudulent transfer case plausibly, the Trustee must provide specific details showing that the Defendants received more than they were entitled to receive, given the definition of "value" in the statute upon which the Trustee's case depends.

### IV.  CONCLUSION AND ORDER

Although the court finds that the Amended Complaint fails to state a claim because it includes no allegation of a "golden creditor" and fails to satisfy the standards of *Iqbal* and *Twombly* given its imprecise allegations regarding the Transfers and reasonably equivalent value, the court does not believe that dismissal is an appropriate remedy, at least not without granting leave to amend.  Fed. R. Civ. P. 15(a)(2).  Indeed, where, as here, "a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).

Irrespective of whether the defects in the Amended Complaint are the product of draftsmanship or gamesmanship,[5] the Ponzi scheme allegations suggest that, with greater particularity, the Trustee should be able to state a plausible claim for relief, at least with respect to transfers directly from the Debtor to the Defendants.  Moreover, because the Trustee filed his

---

[5] The court notes that the Trustee settled a complaint with identical allegations for $2,500.00, although he initially alleged transfers in the aggregate amount of at least $88,000.00.  This probably explains the frustration of at least one defense attorney who, during oral argument, accused the Trustee of using his avoidance power to extract nuisance settlements.

complaint so close to the expiration of the statute of limitations under 11 U.S.C. § 546, the court fears that immediate dismissal, even with leave to re-plead, could invite wasteful litigation regarding the timeliness of the second amended complaint.  Under the circumstances, the court's order will permit the Trustee to file a second amended complaint conforming to the views expressed in this Opinion and Order, within the time prescribed in, and under the provisions of, Fed. R. Civ. P. 12(e).

The court notes that, although the Defendant did not file a motion for a "more definite statement" under Fed. R. Civ. P. 12(e), a more definite statement would serve to streamline the issues in this proceeding, provide adequate notice, and preserve for creditors what would appear, with more careful pleading, to be a plausible claim for relief.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall enter a copy of this Opinion and Order on the docket in each of the twenty-one adversary proceedings considered during the September 12, 2012 hearing and identified in this Opinion and Order on p.2, n.1.

IT IS FURTHER ORDERED that the Clerk shall enter a separate order on the docket in each of the twenty-one adversary proceedings considered during the September 12, 2012 hearing, denying the motion to dismiss, and requiring the Trustee to file a second amended complaint including a more definite statement of his claims.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Jeff A. Moyer, Esq., Earl R. Johnson, Esq., John T. Gregg, Esq., Perry Pastula, Esq., Frederick R. Bimber, Esq., Sandra S. Hamilton, Esq., Harold E. Nelson, Esq., and Robert F. Wardrop, II, Esq.

**IT IS SO ORDERED.**

**Dated September 25, 2012**



_____
Scott W. Dales
United States Bankruptcy Judge